T.C. Summary Opinion 2010-174

UNITED STATES TAX COURT

ROBIN GAIL TORASSA AND MICHAEL SINTEF, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21044-08S.                 Filed December 20, 2010.

Robin Gail Torassa and Michael Sintef, pro sese.

<u>Melissa C. Quale</u>, for respondent.

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7463 of the Internal
Revenue Code in effect when the petition was filed.  Pursuant to
section 7463(b), the decision to be entered is not reviewable by
any other court, and this opinion shall not be treated as
precedent for any other case.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code in

effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a $7,569 deficiency and a $1,513.80 accuracy-related penalty in petitioners' 2005 Federal income tax. Respondent also determined a $6,689 deficiency and a $1,337.80 accuracy-related penalty in petitioners' 2006 Federal income tax. After concessions, the issues for decision are: (1) Whether petitioners are entitled to a casualty loss deduction for taxable year 2005, (2) whether petitioners are entitled to carry over any unused portion of the casualty loss deduction to taxable year 2006, and (3) whether petitioners are liable for an accuracy-related penalty under section 6662(a) for 2005 and/or 2006.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioners resided in California. Hereinafter the term "petitioner" refers solely to petitioner-wife.

Before 2005 petitioner's sister (Ulysses) purchased property in Marin County, California. The property consists of land and an apartment building with four units, two on the upper level and two on the lower level. On November 23, 2005, Ulysses

transferred the property[1] by grant deed to herself and petitioner as tenants in common. On December 31, 2005, the lower two units sustained flood damage. Petitioner lived in one of the two lower units. On February 3, 2006, the President of the United States designated Marin County a federally declared disaster area.

Petitioners and Ulysses agreed that Ulysses would arrange for and coordinate the cleanup and repair of the property. On March 3, 2006, Ulysses and petitioner applied for a disaster home loan with the U.S. Small Business Administration (SBA). An SBA employee examined the property, assessed the damage, and estimated the cost of repairs. The SBA provided a detailed 35-page report which contained the estimated cost of repairs. The report concluded that petitioner and Ulysses together were eligible for a loan of up to $159,900.

Ulysses managed the repair of the property and provided information about the cost of repairs to the units. Ulysses claimed a casualty loss on her 2005 tax return. The IRS questioned the casualty loss, and ultimately Ulysses and the IRS

---

[1]The deed describes the transfer of four parcels of real property, including six numbered lots and two lots with only a legal description.

agreed that she was entitled to a casualty loss of approximately $50,000.[2]

On petitioners' timely filed 2005 Federal income tax return, petitioners claimed a casualty loss of $87,000. Petitioners also claimed a casualty loss of $75,089 on their 2006 Federal income tax return, purportedly as the unused portion of the casualty loss from the 2005 return.

On July 23, 2008, respondent issued to petitioners a notice of deficiency disallowing the 2005 casualty loss deduction in full and determining a deficiency and an accuracy-related penalty. Similarly, on August 7, 2008, respondent issued to petitioners a notice of deficiency disallowing the 2006 casualty loss deduction in full and determining a deficiency and an accuracy-related penalty. Petitioners filed a petition disputing respondent's determinations for 2005 and 2006.

## Discussion

### I. Burden of Proof

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of showing that the determination is in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace. Deputy v. du Pont, 308 U.S.

---

[2]A stipulation of settled issues was filed in docket No. 5900-09 wherein the parties agreed that Ulysses had established a casualty loss of $50,012.

488, 493 (1940); <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934). A taxpayer bears the burden of proving entitlement to any deduction claimed. Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992); <u>Welch v. Helvering</u>, <u>supra</u>; <u>Wilson v. Commissioner</u>, T.C. Memo. 2001-139. A taxpayer is required to maintain records sufficient to substantiate deductions claimed on his or her income tax return. Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.

Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioners have neither alleged that section 7491(a) applies nor established their compliance with the substantiation and recordkeeping requirements. See sec. 7491(a)(2)(A) and (B). Petitioners therefore bear the burden of proof. See Rule 142(a).

II. <u>Casualty Loss</u>

A. <u>In General</u>

Section 165(a) allows as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. Section 165(c) limits the allowance of losses in the case of individuals. A casualty loss is allowable to a taxpayer for a loss of property not connected with a trade or business if the loss results from "fire, storm, shipwreck, or other casualty". Sec. 165(c)(3). Pursuant to section 165(h)(2), a net

casualty loss is allowed only to the extent it exceeds 10 percent of adjusted gross income.

In the case of property held for personal use, the deductible amount is governed by section 1.165-7(b)(1), Income Tax Regs., which provides that the amount of the loss to be taken into account for purposes of section 165(a) shall be the lesser of:  (1) The amount which is equal to the fair market value of the property immediately before the casualty reduced by the fair market value of the property immediately after the casualty, or (2) the amount of the adjusted basis for determining the loss from the sale or other disposition of the property involved. Only the amount of the loss resulting from physical damage to property is deductible under section 165.  Squirt Co. v. Commissioner, 51 T.C. 543, 547 (1969), affd. 423 F.2d 710 (9th Cir. 1970).

The method of valuation to be used in determining a casualty loss is prescribed in section 1.165-7(a)(2), Income Tax Regs., which provides as follows:

> (i) In determining the amount of loss deductible under
> * * * [section 165], the fair market value of the property
> immediately before and immediately after the casualty shall
> generally be ascertained by competent appraisal.  This
> appraisal must recognize the effects of any general market
> decline affecting undamaged as well as damaged property
> which may occur simultaneously with the casualty, in order
> that any deduction under * * * [section 165] shall be
> limited to the actual loss resulting from damage to the
> property.

(ii) The cost of repairs to the property damaged is acceptable as evidence of the loss of value if the taxpayer shows that (a) the repairs are necessary to restore the property to its condition immediately before the casualty, (b) the amount spent for such repairs is not excessive, (c) the repairs do not care for more than the damage suffered, and (d) the value of the property after the repairs does not as a result of the repairs exceed the value of the property immediately before the casualty.

B.   Petitioner's Basis in the Property

Petitioner provided the grant deed in which Ulysses transferred the property to herself and petitioner as tenants in common.  Respondent does not dispute the nature of this ownership.  Petitioner received a one-half undivided interest in the property conveyed by the deed.  See Rich v. Smith, 148 P. 545 Cal. Ct. App. 1915) (a deed conveying land to two grantees, without designating the portions conveyed to each, presumptively conveys to each an undivided one-half interest).  The deed conveys "all of that certain real property" in four parcels. Petitioner, therefore, was granted a one-half interest in the land and buildings on the property described in the deed.

The grant deed does not list the value of the property Ulysses transferred to herself and petitioner, but the deed does list an amount of documentary transfer tax paid on the value of the property of $419.65.  Cal. Rev. & Tax. Code sec. 11911(a) (West 2010) provides that when the value of the property transferred exceeds $100, a county may impose a tax of 55 cents per $500 on a deed for realty.  Additionally, the parties agreed

that the transfer tax rate was $1.10 per $1,000 of the value of the property transferred. Therefore, the value of the property transferred shortly before the flood was $381,500 and the value of petitioner's undivided one-half interest was $190,750. There is no evidence that any improvements were made to the building during the month between the transfer and the flood; thus, there are no adjustments to basis.

C. <u>Amount of Loss</u>

The parties agree that petitioners' property was in a federally declared disaster area and that it sustained damage from the flood in December 2005. Petitioners did not provide receipts for repairs made to their home and instead rely primarily on a disaster loan appraisal[3] to substantiate the amount of the loss.

Petitioner and Ulysses jointly applied for a disaster loan in order to become eligible for a loan to make repairs to the two lower units of the complex, one occupied by Ulysses and one occupied by petitioners. Respondent presented Ulysses as a witness at trial. Ulysses testified to her loss and her efforts to make repairs. Structurally, the damaged apartments are

---

[3]In certain circumstances the Internal Revenue Code and regulations permit a disaster loan appraisal to be considered for purposes of substantiating the amount of the loss. Sec. 165(i). Even though petitioner did not make an election under sec. 165(i)(1), the appraisal is probative.

virtually identical. Ulysses and petitioner were eligible for a $159,900 loan to make repairs ($119,900 was allocated to real property and $40,000 was allocated to personal property). Petitioner's one-half ownership of the two damaged apartments qualified her for eligibility for at least one-half of the loan as it relates to real property ($119,900 ÷ 2), or $59,950. Presumably, petitioner would also be entitled to some portion of the funds allocated to personal property damage.

    D.   <u>Estimated Loss</u>

Section 6001 and the regulations promulgated thereunder require taxpayers to maintain records sufficient to permit verification of income and expenses. As a general rule, if the trial record provides sufficient evidence that the taxpayer has incurred a deductible loss but the taxpayer is unable to substantiate adequately the precise amount of the deduction to which he or she is otherwise entitled, the Court may estimate the amount of the deductible loss, bearing heavily against the taxpayer whose inexactitude in substantiating the amount of the expense is of his own making, and allow the deduction to that extent. <u>Cohan v. Commissioner</u>, 39 F.2d 540, 543-544 (2d Cir. 1930); see also <u>Johnson v. Commissioner</u>, T.C. Memo. 1981-55. However, in order for the Court to estimate the amount of an expense, the Court must have some basis upon which an estimate may be made. <u>Vanicek v. Commissioner</u>, 85 T.C. 731, 742-743

(1985).  Without such a basis for an estimate, any allowance would amount to unguided largesse.  <u>Williams v. United States</u>, 245 F.2d 559, 560-561 (5th Cir. 1957).

Respondent agreed that the other joint tenant was entitled to claim a casualty loss of $50,012 which "reflects [Ulysses'] 50% ownership of the damaged property located at [the address of the property Ulysses owns with petitioner]".[4]  As outlined above, petitioner's basis in the property is $190,750.  According to the disaster loan appraisal, wherein a Federal employee from the SBA estimated the damage and cost of repairs of the entire property, petitioner would have been eligible for an undivided one-half of the $159,900 loan to make repairs to one of the lower level units.  The lower level units were structurally similar, and the estimated cost to repair each apartment was $59,950.  There is no evidence that either unit required more repairs than the other.

Bearing heavily against petitioners whose inexactitude is of their own making, and considering the estimates of repair by the SBA, we conclude that petitioners sustained a casualty loss in 2005 of $50,012.

---

[4]See <u>supra</u> note 2.

III. <u>Net Operating Loss</u>

A deduction for a casualty loss allowable under section 165(c)(3) shall be treated as attributable to the taxpayer's trade or business.  See sec. 172(d)(4)(c).  Generally, before a net operating loss (NOL) may be carried forward, it must be carried back (carryback rule).  See sec. 172(b); sec. 1.172-4(b)(1) and (2), Income Tax Regs.  In the case of a casualty loss, the carryback period is 3 years.  Sec. 172(b)(1)(F).  On a timely filed return, a taxpayer may elect to waive application of the carryback rule and instead carry the loss forward.  See sec. 172(b)(3); see also sec. 301.9100-12T(d), Temporary Proced. & Admin. Regs., 57 Fed. Reg. 43896 (Sept. 23, 1992) (redesignating section 7.0(d), Temporary Income Tax Regs., 42 Fed. Reg. 1470 (Jan. 7, 1977)).  However, it appears that petitioners failed to make an election to waive the carryback and therefore must carry back any unused casualty loss.

It appears from our conclusions herein that the loss was fully absorbed in 2005.  Even if the loss was not fully absorbed in 2005, petitioners must establish that the loss was not absorbed by their gross income in the prior 3 years in order to carry any loss forward to 2006.  See sec. 172(b)(1)(A); <u>Jones v. Commissioner</u>, 25 T.C. 1100, 1104 (1956), revd. in part and remanded on other grounds 259 F.2d 300 (5th Cir. 1958); sec. 1.172-4(b)(1) and (2), Income Tax Regs.  The record does not

contain information about petitioners' previous returns.
Accordingly, we sustain respondent's determination with respect
to petitioner's NOL carryover for 2006.

## IV.  Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes a penalty equal
to 20 percent of any underpayment of tax that is attributable to
negligence or a disregard of rules or regulations or to a
substantial understatement of income tax.  Negligence includes
any failure to keep adequate books and records or to substantiate
items properly.  Sec. 1.6662-3(b)(1), Income Tax Regs.  An
understatement is substantial if it exceeds the greater of:
(1) 10 percent of the tax required to be shown on the return for
the taxable year, or (2) $5,000.  Sec. 6662(d)(1)(A).

The accuracy-related penalty under section 6662(a) does not
apply to any portion of an underpayment if it is shown that there
was reasonable cause for, and that the taxpayer acted in good
faith with respect to, such portion.  Sec. 6664(c)(1).  Although
the Commissioner bears the burden of production under section
7491(c), the taxpayer bears the burden of proving reasonable
cause under section 6664(c).  Higbee v. Commissioner, 116 T.C.
438, 446-447 (2001).  Respondent has met his burden of production
by showing that petitioners did not provide documentation
substantiating the amount of their disaster loss.

The determination of whether the taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including the taxpayer's efforts to assess the proper tax liability; the knowledge and the experience of the taxpayer; and the reliance on the advice of a professional, such as an accountant. Sec. 1.6664-4(b)(1), Income Tax Regs. Reliance upon expert advice will not exculpate a taxpayer who supplies the return preparer with incomplete or inaccurate information. Lester Lumber Co. v. Commissioner, 14 T.C. 255, 263 (1950). Tax preparation software "is only as good as the information one inputs into it." Bunney v. Commissioner, 114 T.C. 259, 267 (2000). Reliance on a preparer or software is not reasonable where even a cursory review of the return would reveal inaccurate entries. See Pratt v. Commissioner, T.C. Memo. 2002-279.

We reject petitioners' claimed reliance on tax preparation software, since a cursory review would show petitioners' attempt to deduct the entire amount of the casualty loss in each of the years 2005 and 2006. Thus, petitioners' reliance on the software was not reasonable for 2006. Also, on the basis of our findings, petitioners claimed deductions for amounts substantially greater than they were entitled to in 2005. We conclude that petitioners neither acted with reasonable cause nor established their good faith reliance on the tax preparation software. Petitioners do

not qualify for the reasonable cause exception of section 6664. Therefore, we sustain respondent's determination that petitioners are liable for the accuracy-related penalty pursuant to section 6662 for 2006.  We also sustain respondent's determination that petitioners are liable for the accuracy-related penalty to the extent there remains a deficiency for 2005.

To reflect the foregoing,

Decision will be entered under

Rule 155.